*471 OPINION OF THE COURT
Alexander, J.
We conclude upon this appeal that respondent, Commissioner of Health, improperly considered the ability of petitioners to "afford” labor cost increases above projected levels in determining whether to grant their applications, pursuant to the Supplemental Hospital Index Factor (SHIF) program, for a waiver of the labor cost reimbursement ceiling. Accordingly, his refusal, on the basis of "affordability”, to reimburse petitioners for their actual labor costs pursuant to the SHIF program was arbitrary and capricious.
Pursuant to Public Health Law § 2807 (3), respondent, Commissioner of Health, is empowered to set hospital reimbursement rates for Medicaid, Blue Cross, workers’ compensation, and no-fault insurance. The computation of a hospital’s reimbursement rate is based on the hospital’s actual costs incurred during a given base year which are then adjusted for inflation, or "trended”, yielding projected costs which are thereafter used to establish the rate at which the hospital may be reimbursed (see, Public Health Law § 2807 [2] [j] [i], amended and renum Public Health Law § 2808-c [8], L 1985, ch 807, § 4; 10 NYCRR 86-1.15). In "trending” actual costs, the Commissioner may consider various factors affecting health care costs, including projected labor cost increases (10 NYCRR 86-1.15). In 1978, the Commissioner established the SHIF program in order to provide relief to individual hospitals that, as a result of increased labor costs arising from multiyear labor agree *472 ments, would suffer hardship if the calculation of their reimbursement rates did not reflect the actual labor cost increases (see, 10 NYCRR 86-1.17 [a] [5]).[1] Under the SHIF program, the Commissioner may grant a waiver of the trend factor that limits reimbursable labor costs, in which event the hospital may be reimbursed for its actual — as opposed to projected— labor cost increases.
In addition to satisfying various SHIF eligibility requirements set forth in a Health Facilities Memorandum issued by the Commissioner, an applicant was required to pass a separate "affordability” test measuring its ability to pay for increased labor costs from its own resources without the benefit of a SHIF waiver. In assessing a particular hospital’s ability to afford increased labor costs, the Commissioner employed a "current ratio” test which compared a hospital’s assets to its liabilities. If the hospital’s total assets were found to be greater than its total liabilities, the hospital would be considered sufficiently affluent to "afford” its labor cost increases, and would thus be ineligible for SHIF waiver benefits.
Applications for SHIF benefits by hospitals belonging to a group governed by a single collective bargaining agreement, such as the League of Voluntary Hospitals or the Association of Private Hospitals, were treated differently from applications by independent hospitals. SHIF waivers were awarded to the members of such groups, if the group’s total liabilities exceeded the group’s total assets, notwithstanding that an individual member’s assets may have exceeded its liabilities. Petitioners, New York Hospital and the New York Eye and Ear Infirmary — two independent hospitals not members of a particular group — applied for SHIF waivers for the rate period July 1, 1978 to June 30, 1980. New York Hospital also applied for a SHIF waiver for the rate period July 1, 1980 to June 30, 1982. The Commissioner denied the applications, finding that the petitioners’ respective assets exceeded their respective liabilities, and thus each petitioner could "afford” the increased labor costs for the applicable rate period resulting from their multiyear wage agreements. Petitioners subsequently commenced separate article 78 proceedings challenging the Commissioner’s denial of SHIF benefits for the 1978- *473 1980 rate period. Additionally, New York Hospital sought a declaratory judgment that it was entitled to the SHIF waiver for the 1980-1982 rate period.
Special Term consolidated the article 78 proceedings and the declaratory judgment action and declared, as a matter of law, that the Commissioner’s reimbursement rate structure and the requirements for determining SHIF eligibility, including consideration of the "affordability” factor had a rational basis, and therefore were reasonable so long as they were uniformly applied. Special Term denied motions and cross motions for summary judgment, however, and ordered a trial to determine whether the eligibility requirements were arbitrarily applied to petitioners.
The Appellate Division disagreed with Special Term and declared that the Commissioner’s exclusion of petitioners from the SHIF program on the basis asserted was arbitrary and capricious. That court modified Special Term’s order by granting summary judgment to petitioners, concluding that they were entitled to the SHIF waiver benefits for the relevant rate periods since neither Public Health Law §2807 (3), nor the regulations promulgated thereunder, authorized the Commissioner to use an "affordability” test in determining SHIF eligibility. The Appellate Division further held that, even if the Commissioner’s requirement of "affordability” was authorized, the "current ratio” test was nevertheless arbitrarily applied to petitioners because the current ratios of some hospitals were computed by comparing the total assets and liabilities of the group to which they belonged, whereas the current ratios of petitioners were computed individually. The court remanded the cases to the Commissioner directing the assessment of benefits due and owing.
In assessing the validity of the Commissioner’s use of an "affordability” standard in determining a hospital’s eligibility to receive a SHIF waiver, our scope of review is limited to determining whether that eligibility requirement represents a reasonable exercise of the Commissioner’s authority (see, Matter of Sisters of Charity Hosp. v Axelrod, 59 NY2d 872, affg on opn below 89 AD2d 821; Matter of Sigety v Ingraham, 29 NY2d 110). Generally, rate-setting actions of the Commissioner, being quasi-legislative in nature, may not be "annulled except upon a compelling showing that the calculations from which [they] derived were unreasonable” (see, Matter of Catholic Med. Center v Department of Health, 48 NY2d 967, 968). *474 However, "in exercising its rule-making authority an administrative agency cannot extend the meaning of the statutory language to apply to situations not intended to be embraced within the statute” (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588, 595). Moreover, an agency may not "promulgate a rule out of harmony with or inconsistent with the plain meaning of the statutory language”. (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d, at 595, supra.)
Here, by considering petitioners’ respective capacities to afford increased labor costs, the Commissioner exceeded the statutory mandate, and thus acted arbitrarily in denying petitioners’ SHIF benefits. During the periods in issue, the Commissioner was required by statute to certify that reimbursement rates for inpatient hospital services were "reasonably related to the costs of efficient production of such service” (Public Health Law § 2807 [3], L 1969, ch 957, § 4).[2] In certifying rates, the Commissioner was directed to consider "the elements of cost, geographical differentials in the elements of cost considered, economic factors in the area in which the hospital is located, the rate of increase or decrease of the economy in the area in which the hospital is located, costs of hospitals of comparable size, and the need for incentives to improve services and institute economies” (Public Health Law § 2807 [3], L 1969, ch 957, § 4). Pursuant to this legislative mandate, the Commissioner promulgated regulations for the computation of, and the waiver of, rate ceilings (10 NYCRR part 86 et seq.).
It is evident from the statutory language that denial of a waiver of the rate ceiling predicated on a factor unrelated to the reasonableness of hospital costs was arbitrary because premised upon a ground that the Commissioner was not authorized to consider under the statute (see, Matter of Kew Gardens Sanitarium v Whalen, 55 AD2d 226, 229, affd on opn below 43 NY2d 675; see also, Matter of Larkin Co. v Schwab, 242 NY 330, 334). Despite the Commissioner’s contention that the ability to afford higher labor costs is a factor reasonably related to "efficient production” of hospital services, the stat *475 ute in effect at the relevant times did not so provide (Public Health Law § 2807 [3], L 1969, ch 957, § 4). Moreover, while the financial wealth of an individual hospital may bear on that hospital’s potential capability of meeting increased labor costs, such wealth has no relevance to the Commissioner’s assessment of the reasonableness of labor costs in the hospital service industry — the benchmark for determining whether a particular hospital’s labor costs are reasonable. By applying an "affordability” test to determine the eligibility of petitioners for a SHIP waiver, the Commissioner considered a factor that he could not have permissibly considered in certifying reimbursement rates. Thus, the Commissioner construed the statutory language, as it then existed, beyond its intended scope.[3] Consequently, the denial of SHIP waiver benefits to petitioners pursuant to the "affordability” analysis was arbitrary and capricious.
Finally, we conclude that in directing the award of SHIP waiver benefits, and remitting for a determination of the benefits, the Appellate Division impermissibly interfered with the agency’s discretion. We have considered the Commissioner’s remaining contentions and find them to be without merit. Accordingly, the order of the Appellate Division should be modified by remitting the matters to the Commissioner of Health for a determination of petitioners’ applications for SHIP benefits without considering "affordability”, and, as so modified, affirmed.
Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur; Chief Judge Wachtler taking no part.
Order modified, with costs to appellants, and matter remitted to Supreme Court, New York County, with directions to remand to the Commissioner of Health for further proceedings in accordance with the opinion herein and, as so modified, affirmed.

. It appears that the SHIF program was initiated in response to a threatened strike by District 1199 of the Health and Hospital Workers Union against the League of Voluntary Hospitals, a voluntary association that functions as an authorized bargaining agent for its member hospitals.

. The statute has since been amended to require the Commissioner to certify that the reimbursement rates "are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities” (Public Health Law § 2807 [3], L 1982, ch 536, § 3).

. We note that under present law, the Commissioner is authorized to consider the fiscal capability of a general hospital to finance labor cost increases out of its own resources in determining whether to grant a rate adjustment to a hospital’s annual revenue cap (see, Public Health Law § 2808-c [5] [c] [i]). This statutory provision, however, was not in effect at the time petitioners applied for SHIF benefits, and the Commissioner does not invoke this provision on this appeal (see, Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588, 593).